17-464-cr
*United States v. Steele*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of April, two thousand eighteen.

Present:
> AMALYA L. KEARSE,
> GUIDO CALABRESI,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges*,

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                          17-464-cr

JOSEPH STEELE,

> *Defendant-Appellant*,

---

| | |
|---|---|
| For Appellee: | JILAN KAMAL (Karl Metzner, *on the brief*), Assistant United States Attorneys, Of Counsel, *for* Joon H. Kim, Acting United States Attorney for the Southern District of New York, New York, NY. |
| For Defendant-Appellant: | LUCAS ANDERSON, Rothman, Schneider, Soloway & Stern, LLP, New York, NY. |

1

Appeal from a judgment of the United States District Court for the Southern District of New York (Marrero, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Joseph Steele appeals from a judgment entered by the United States District Court for the Southern District of New York, convicting him of one count of unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). On October 28, 2016, after a four-day trial, the jury returned a guilty verdict. During Steele's sentencing hearing, the district court "adopt[ed] the factual recitation in the presentence investigation report regarding the criminal history category, offense level, and sentencing range," J.A. 452, which included findings that Steele had three prior convictions for a violent felony or serious drug offense, thus triggering a fifteen year mandatory minimum sentence pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). On February 10, 2017, the district court entered a judgment of conviction and sentenced Steele principally to 180 months of imprisonment followed by five years of supervised release. This appeal followed. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. ACCA

The first issue on appeal is whether Steele's prior New York state conviction for first-degree robbery constitutes a "violent felony" pursuant to the force clause of the ACCA, which defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." *Stuckey v. United States*, 878 F.3d 62, 68 (2d Cir. 2017) (quoting 18 U.S.C. § 924(e)(2)(B)(i)); *see also* Def.-Appellant Br. 22–23 (focusing appeal on the force clause). After the parties' briefs were submitted in this appeal, we issued an opinion in

2

*Stuckey v. United States* on December 20, 2017 which squarely addresses this issue. *See* 878 F.3d at 68–72. Steele conceded at oral argument that *Stuckey* forecloses his ACCA challenge. Steele was convicted of first-degree robbery pursuant to subsection (4) of N.Y. Penal Law § 160.15, which provides that "[a] person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he . . . [d]isplays what appears to be a . . . firearm." N.Y. Penal Law § 160.15(4); Def.-Appellant Br. 28 (admitting "the record sufficiently demonstrates that Steele was previously convicted under subsection (4)"). In *Stuckey*, we held that a conviction pursuant to subsection (4) of N.Y. Penal Law § 160.15 constitutes a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(i); accordingly, Steele was properly sentenced under the ACCA. 878 F.3d at 72.

## II. Admissibility of the Gunshot Residue Report

Steele next argues that the district court erred in excluding a gunshot residue report prepared by New York Police Department Criminalist Vanessa Martinez. Steele contends that the report should have been admitted into evidence because it qualifies as a public record pursuant to the public record exception to the hearsay rule. Def.-Appellant Br. 32–38 (citing Fed. R. Evid. 803(8)(A)(iii) (referring to "a record or statement of a public office" that "sets out . . . against the government in a criminal case, factual findings from a legally authorized investigation")). According to Steele, the gunshot residue report should have been admitted "regardless of the availability of the declarant [Martinez]" and the government failed to "show that the source of information or other circumstances indicate a lack of trustworthiness." *Id.* (citing cases discussing Fed. R. Evid. 803(8)(B) (emphases omitted)).

A trial court's evidentiary rulings are accorded deference. We will reverse only if we find an abuse of discretion, which occurs when we find that "the challenged evidentiary rulings were 'arbitrary and irrational.'" *United States v. Quinones*, 511 F.3d 289, 307–08 (2d Cir.

3

2007) (quoting *United States v. Dhinsa*, 243 F.3d 635, 649 (2d Cir. 2001)); *see also United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002). There was no such abuse of discretion here. Assuming arguendo that we agree with Steele that the report fell within the public record exception to the hearsay rule, we conclude that it was reasonable for the district court to determine, as it did, that admitting the report by itself would be misleading, and to exclude the report pursuant to Federal Rule of Evidence 403. *See* Fed. R. Evid. 403; *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167–68 (1988) (noting, in discussing public records exception, that "safeguards built into other portions of the Federal Rules, such as those dealing with relevance and prejudice, provide the court with additional means of scrutinizing and, where appropriate, excluding evaluative reports or portions of them"); *see also* J.A. 65–66 (in opposing Steele's motion to offer into evidence the gunshot residue report, the government argued that the report was inadmissible pursuant to Rule 403). Although the district court did not specifically cite Rule 403 in its analysis, "[w]e do not require a district court 'to articulate the relevant considerations on the record,' and we ordinarily assume that such due consideration was given." *United States v. Morgan*, 786 F.3d 227, 232 (2d Cir. 2015) (citation omitted); *see also United States v. Oberoi*, 547 F.3d 436, 455 (2d Cir. 2008) (observing "the decision 'must be affirmed if the result is correct although the lower court relied upon a wrong ground or gave a wrong reason'" (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943) (internal quotation marks omitted))), *judgment vacated on other grounds*, 559 U.S. 999 (2010). The district court was thus well within its discretion, and certainly did not "act[] arbitrarily and irrationally," *Garcia*, 291 F.3d at 136, in excluding the gunshot residue report because its "probative value [was] substantially outweighed by a danger of . . . misleading the jury." Fed. R. Evid. 403.

## III.    Improper Remarks on Summation

Finally, Steele argues that the government encouraged the jury to predetermine Steele's guilt before deliberations and improperly vouched for one of its witnesses on summation. Specifically, Steele challenges the following two statements made by the government:

1) "[S]ince you have been paying . . . attention, you already know what the evidence shows: Joseph Steele is guilty as charged."   J.A. 328.

2) "[Betancourt] has no motive to lie . . . he's a good citizen and he did what we hope all good citizens do when they see that kind of danger on the street . . . . And I think after listening to that 911 call, you know he testified to you truthfully." *Id.* at 331–32.

To warrant reversal of a conviction, an improper remark by a prosecutor must "cause[] the defendant substantial prejudice so infecting the trial with unfairness as to make the resulting conviction a denial of due process."   *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005) (quoting *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999)).   And where, as here, Steele "did not object to the [government's] remarks at trial, reversal is warranted only [if] the remarks amounted to a 'flagrant abuse.'"   *United States v. Germosen*, 139 F.3d 120, 128 (2d Cir. 1998) (quoting *United States v. Araujo*, 79 F.3d 7, 9 (2d Cir. 1996)).

Steele argues that the first challenged remark undermined the presumption of innocence by urging the jury to predetermine Steele's guilt.   This argument is unconvincing.   The full context of this first remark consists of repeated reminders to the jury to look to "what the evidence shows." J.A. 328 ("Now, ladies and gentlemen, you have seen and heard the evidence. I know you have been paying close attention. And since you have been paying close attention, you already know what the evidence shows:   Joseph Steele is guilty as charged.").   Therefore, "[v]iewed in context, we doubt[] that the prosecutor's statement would have been viewed by the jury as more

5

than an exhortation to find [the defendant] guilty based on the evidence." *United States v. Perez*, 144 F.3d 204, 210 (2d Cir. 1998) (internal quotation marks omitted); *see also United States v. Miller*, 116 F.3d 641, 683 (2d Cir. 1997) ("We doubt that the statement that [defendants] were 'guilty on all counts' would have been viewed by the jury as more than an exhortation to find them guilty based on the evidence.").

Steele's argument that the second challenged remark constituted improper vouching is also unconvincing. Again, the full context for the government's remark begins with the government directing the jury to consider the evidence: "I am going to talk about each . . . piece[] of evidence and how they support one another for the next few minutes. Let's start with the 911 caller." J.A. 330. The government then proceeded to describe the 911 caller's testimony, play excerpts from the 911 call, and describe what that 911 call shows. *Id.* at 330–31. Only after reminding the jury of the evidence in the record did the government make the statement at issue here, which is reproduced with more context as follows:

> So that's what he told the 911 operator at the time. And then he came to court on Monday and he testified in front of all of you. Now, look, did he want to be here? No. I think we can all understand that. He doesn't know the defendant. He was in the wrong place at the wrong time, and there is nothing in this for him. He has no motive to lie. But he's a good citizen and he did what we hope all good citizens do when they see that kind of danger on the street: He called 911 because he thought someone was going to get hurt, and then he came here and he answered my questions. He answered [defense counsel's] questions. And I think after listening to that 911 call, you know he testified to you truthfully. He was consistent. The 911 caller testified totally consistently with what he had said and what he had told that 911 operator a year ago . . . .

J.A. 331–32. This excerpt shows that the jury was still being urged to "decide this case based on the evidence" by considering whether the 911 caller had a motive to lie, and by drawing attention to how the 911 caller's trial testimony was consistent with the information he gave during the 911 call. *Miller*, 116 F.3d at 683; *see also United States v. Spinelli*, 551 F.3d 159,

6

169 (2d Cir. 2008) ("The prosecutor is of course entitled to argue forcefully and vigorously to the jury in support of her witness's credibility.  But the argument must be based on evidence in the record.").  "In a particular context . . . what might superficially appear to be improper vouching for witness credibility may turn out on closer examination to be permissible reference to the evidence in the case."  *Perez*, 144 F.3d at 210.  That is precisely what happened here. The government's comments did not rise to the level of "flagrant abuse," *Germosen*, 139 F.3d at 128, nor did they cause Steele to suffer "substantial prejudice," *Carr*, 424 F.3d at 227.

*      *      *

We have considered Steele's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk